NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHAHID TANVIR, Plaintiff, | Civil Action No. 05-1464 (PGS) |
| v. | **OPINION** |
| QUEST DIAGNOSTICS, Defendant. | |

**SHERIDAN, U.S.D.J.**

Plaintiff Shahid Tanvir, Pro Se brought an action against Quest Diagnostics (Quest) alleging that Quest did not hire him due to his age (over forty), his national origin (Pakistan), his race (South Asian) and his religion (Muslim). He alleges violation of 42 U.S.C. §2000e, *et seq*., Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 *et seq*. More specifically, Plaintiff alleges two incidents when Quest failed to hire him in violation of these statutes, once in 2002, and then a second time in 2004. Defendant has moved, pursuant to Fed.R.Civ.P. 56(b), to dismiss the complaint in its entirety. Plaintiff opposed this motion.

Plaintiff appealed two orders of Magistrate Arleo. The first order limited discovery to time the period at issue in the complaint and the second order set forth the briefing scheduling for dispositive motions. Plaintiff also moved to strike the affidavit of Mr. Robert Gurango submitted by

Defendant in support of its motion for summary judgment, stating that he did not have the opportunity to depose this individual. This Court denied both appeals in order dated April 10, 2007, but permitted Plaintiff to depose Mr. Robert Gurango. Subsequently, the deposition was taken. Thereafter, Defendant submitted a supplemental brief to which plaintiff replied. Oral argument was held on July 25, 2007. Based upon oral argument, plaintiff was permitted to sur reply.

***Facts*:**

Clinical Diagnostics Services Inc. ("CDS") hired Plaintiff in November 2001 as a medical technologist in its chemistry department. At the time of his hiring, Plaintiff was fifty (50) years of age and a practicing Muslim. While at CDS, Plaintiff was required to provide credentialing information from a foreign education service establishing that he has acquired the foreign equivalent of a bachelor's degree. Plaintiff provided CDS with this information from World Education Services("WES") an education evaluation service on May 22, 1995. Plaintiff's supervisor at CDS was Robert Gurango, he was section manager of the chemistry department at the time. Plaintiff concedes that while employed by CDS he was regularly given time to pray, time for religious holidays, and was permitted to observe Ramadan. In late 2001, Quest Diagnostics announced its purchase of CDS. Quest implemented a hiring freeze with respect to employees, with the title of medical technician or medical technologist. All CDS employees who held the same or similar positions were allowed to apply for employment with Quest, so long as they met certain criteria. Employees with degrees from foreign universities were required to provide CDS's human resources department with credentialing information from International Education Research Foundation ("IERF") in order to determine whether employees possessed the United States equivalent of a bachelor's degree. Quest reviewed the employees' personnel files, and if the IERF information was

not present, they had CDS's human resources department request the information from its employee. According to Defendant, it was the responsibility of CDS's human resources department to contact an employee directly regarding any additional documentation required by Quest. Plaintiff does not dispute this requirement, he simply states that no one informed him that the credentialing information had to come from IERF rather than WES. He states that he completed and submitted to management a career assessment sheet which listed his license, credentials, work experience history and a form that he intended to be transferred to Quest. However, according to Plaintiff, he was excluded from the interview process.

Those CDS employees who met the requirements established by Quest were given positions of employment, while those who did not were offered severance packages. Quest hired about twenty (20) CDS employees from the lab in which Plaintiff worked, and of those requiring credentialing, twelve belonged to the Asian ethnic group. Quest maintains that Plaintiff was not offered a position because their human resources department did not receive documentation from IERF validating plaintiff's foreign education experience. Plaintiff concedes that he never provided credentialing information from IERF or WES at that time. As a result, Quest could not determine whether Plaintiff was suitable for employment in his position as a medical technician.

Plaintiff executed a Separation Agreement and General Release ("Agreement") with CDS on July 30, 2002. Pursuant to the Agreement, Plaintiff received twelve (12) weeks severance pay. Plaintiff's last day of work was August 25, 2002. Plaintiff asserts that Mr. Gurango informed him that Quest was not interested in hiring any individuals over the age of fifty (50), an assertion Mr. Gurango denies.

The second incident of which Tanvir complains occurred in 2004. Quest advertised positions for medical technicians, and Plaintiff applied. The job postings required a Bachelor of Science degree and relevant experience in the field. In the job posting, there is no reference that IERF certification was required. On or about March 12, 2004, Plaintiff completed and submitted to Quest an employment application. This application set forth his undergraduate and graduate degrees in chemistry, and his work experience in hematology and chemistry labs in New York hospitals. According to the Defendant, its protocol following receipt of such an application is to conduct a follow-up telephone interview. Plaintiff's application was processed on March 24, 2004. At this time, Sharon Warren, a staffing specialist with Quest, reviewed Plaintiff's application. She states that within seven days of reviewing Tanvir's application she received a call from Plaintiff, expressing interest in the medical technologist position. She advised Plaintiff of the educational requirements, specifically stating that because his degree was from a university outside the United States, he needed to provide documentation from IERF indicating that his foreign educational training was the equivalent of a bachelor's degree from a college or university of the United States. Plaintiff refutes ever speaking to Ms. Warren. According to Plaintiff, he never attempted to contact the Defendant regarding his application, save one incident in which he appeared at Quest's human resources offices without an appointment and he was not given an interview.

Plaintiff filed a Charge of Discrimination against Quest with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 12, 2004. The charge alleges that defendant discriminated against him on the basis of his age, religion, and national origin. In response, Defendant provided the EEOC with a listing of all of its 2004 laboratory new hires, in the medical technician and technologist positions who were over the age of forty (40) and in the same ethic group

as plaintiff, i.e., Asian Pacific. The EEOC issued a Dismissal and Notice of Rights, dated December 21, 2004.

I.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." ' *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir.2004) (*quoting Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir.1985) *cert denied* 475 U.S. 1013 (1986). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248.; *Siegal Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir.1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48.

II.

**2002 Failure to Hire**

Defendant moves to dismiss Plaintiff's 2002 failure to hire claim on three grounds: (1) the statute of limitations expired; (2) the Separation Agreement bars recovery; and (3) failure to establish a prima facie case. For the reasons stated below, the 2002 claim is time barred, and as such, there is no need to discuss the other grounds asserted for dismissal.

Both Title VII and the ADEA require that a plaintiff file a charge with the EEOC prior to filing a complaint in federal court. *Legani v. Alitalia Linee Aeree Italiane, S.P.A.* 274 F.3d 683, 686 (2d. Cir. 2001). A charge must be filed with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice. The EEOC must serve notice of the charge on the employer within ten days of the filing of the charge. 42 U.S.C. §2000e-5(e)(1); *see also, Occidental Life Ins. Co., v. EEOC*, 432 U.S. 355, 359 (1977)[1]. The EEOC must investigate the charges within 180 days. 42 U.S.C. §2000e-5(f)(1). *See, Occidental Life*, 432 U.S. at 361 (holding that a private right of action does not arise until 180 days after a charge has been filed). Plaintiff filed his complaint with the EEOC charging age and national origin discrimination on April 12, 2004, about twenty months after the incident and well beyond the 180 day allotted time period. Therefore, Plaintiff's 2002 failure to hire claims under the ADEA and Title VII (for race, national origin, and religion) are barred pursuant

[1] If the complainant also initiates a complaint with a parallel state agency, the period for filing the charge with the EEOC is extended to 300 days from the date of the alleged unlawful employment practice. 42 U.S.C. §2000e-5(e)(1). There is no indication that this 300 day period is applicable in the instant action.

to 42 U.S.C.§2000e-5(e)(1). *See, Wein v. Thompson Inc.*, 2006 WL 2465220, *6 (Aug. 23, 2006); *Butts v. N.Y. City Dep't of Hous. Pers. & Dev*., 2007 U.S. Dist. LEXIS 6534, *20 (S.D.N.Y. Jan. 29, 2007).

Plaintiff alternatively argues that this Court should equitably toll the statute of limitations period and permit the claims to move forward. Plaintiff maintains that under the following theories equitable tolling is warranted in this matter. That is, Plaintiff maintains: (1) Defendants waived the statute of limitations defense by failing to raise it in their initial motion for summary judgment; (2) that the Separation Agreement "prevented", "misled" or at least "inhibited" him from pursuing his 2002 claim; and (3) that their failure to hire is part of a continuing violation that mandates equitable tolling. Equitable tolling may be appropriate (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir.1994).

Plaintiff argues that Defendant waived the affirmative defense of statute of limitations by failing to raise it in their initial motion for summary judgment. However, the Third Circuit has held that a defendant was not barred in bringing up the affirmative defense on a motion for summary judgment even where he had failed to plead the defense. According to the Third Circuit, "[a]ffirmative defenses can be raised by motion, at any time (even after trial), if plaintiffs suffer no prejudice." *Cetel v. Kirwan Financial Group, Inc*., 460 F.3d 494, 506 (3d Cir. 2006) *quoting Charpentier v. Godsil*, 937 F.2d 859, 863-64 (3d Cir.1991).

While Plaintiff argues that he has suffered prejudice, the Court rejects same as the Defendant pled the affirmative defense in its answer, giving plaintiff ample notice of the defense. *See also, Prinz v. Greate Bay Casino Corp.*, 705 F.2d 692, 694-95 (3d Cir. 1983) (holding that an affirmative defense could be raised on appeal even when not plead at trial, when the "facts underlying the affirmative defense were pleaded."). *See also, Lucas v. United States*, 807 F.2d 414, 418 (5th Cir.1986), *quoting Allied Chemical Corp. v. MacKay*, 695 F.2d 854, 855-56 (5th Cir.1983). This Court allowed Plaintiff adequate opportunity to respond to the statute of limitations argument and thus Plaintiff has not been prejudiced.

Plaintiff asserts that the statute of limitations should be equitably tolled as it was part of a continuing violation. Under the continuing violation theory the "plaintiff must demonstrate that at least one act occurred within the filing period" and that the acts complained of are "more than the occurrence of isolated or sporadic acts of intentional discrimination." *Harley v. City of Philadelphia*, 2003 U.S. Dist. LEXIS 20191 at * 12 (E.D.Pa. Nov. 4, 2003) (*citing West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754-55 (3d Cir.1995)). In one case, the Third Circuit enumerated a list of discrete acts which cannot be aggregated under the continuing violations theory. *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir.2006). The non-exhaustive list of discrete acts, included "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation." *Id.* Plaintiff's claim is based upon the refusal to hire in July 2002. Plaintiff attempts to connect the 2002 failure to hire claim with the 2004 claim, but there is no proof that the incidents are in any way related. Each involved different factual situations. In 2002, there was a merger of two companies and in 2004 Plaintiff was responding to a general advertisement in a newspaper at a different location. There is no relationship between them.

Finally, Plaintiff asserts that the Defendant prevented, mislead, or at least inhibited him from pursuing his 2002 failure to hire claim by virtue of the Separation Agreement. According to Plaintiff, the Separation Agreement fraudulently induced plaintiff not to bring suit. *Ott v. Midland Ross Co.*, 523 F.2d 1367 (6th Cir. 1975). *See also, Bennett v. Quark Inc.*, 258 F.3d 1220 (10th Cir. 2001). "To invoke equitable tolling a plaintiff must show that due to the defendants' deception, "[h]e could not, through the exercise of reasonable diligence, discover essential information bearing on [his] claim." *Oshiver*, 38 F.3d at 1390; *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1125-26 (3d Cir.1997). Stated differently, the plaintiff must take "reasonable measures to uncover the existence of an injury." *Oshiver*, 38 F.3d at 1390 (*citing Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir.1988)). Plaintiff was not misled. He freely entered into the Separation Agreement. In addition, at that time Tanvir contended that his supervisor advised that Quest would not hire people over 50 years of age. Hence, Tanvir knew of the basis of his lawsuit at that time. The burden is on the plaintiff to show that the defendant actively misled him, and that this deception caused the plaintiff's non-compliance with the limitations period. *Oshiver*, 38 F.3d at 1387-90. There is no such proof here.

In employment discrimination cases, the cause of action accrues and the statute begins to run when the adverse decision is made and is communicated to the plaintiff. *Scott v. IBM Corp.*, 196. F.R.D. 233, 253 (D.N.J. 2000) *citing Oshiver*, 38 F.3d at 1385-86. The mere fact that a Separation Agreement existed is insufficient to show he was misled. Moreover, the cases upon which Plaintiff relies are entirely distinguishable. In one case, *Ott v. Midland Ross Company*, 523 F. 2d. 1367 (6th Cir. 1975) plaintiff asserted that he was instructed to drop his ADEA claims in exchange for ongoing consulting work which never materialized. Plaintiff here does not allege any similar proof. Plaintiff

has failed to present any evidence that he did not proceed on his claim due to the Separation Agreement. In fact the current action demonstrates that Plaintiff did not see the Separation Agreement as a bar to instituting a claim. *Scott v. IBM Corp.*, 196. F.R.D. 233, 253 (D.N.J. 2000) *citing Oshiver*, 38 F.3d at 1385-86. It is evident that Plaintiff simply slept on his claims and thus, they are time-barred. *Id*. at 253.

**2004 Failure to Hire**

Defendants assert that Plaintiff is unable to establish a prima facie case of discrimination based on race, religion, age, or national origin, with regard to their failure to hire him in 2004. Plaintiff in opposition argues that he has established a prima facie case, and that there is disputed material fact with regard to defendant's proffered reason for failing to hire him, i.e., he lacked documentation from IERF substantiating his foreign education.

The *McDonnell Douglas* burden shifting analysis applies here. The *McDonnell Douglas* three-step burden shifting process is applied to both ADEA and Title VII claims. *McDonnell Douglas Corp., v. Green*, 411 U.S. 792, 802-04 (1973). First, the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. That is, (1) that he belongs to a protected class; (2) that he was qualified for the position; (3) that despite his qualifications he was not hired; and (4) that under the circumstances raising an inference of discrimination, the employer continued to seek out individuals with qualifications similar to plaintiff's. *Thoman v. Philips Medical Systems*, 2007 WL 203943, *6 (D.N.J. Jan. 24, 2007); *Verdin v. Weeks Marine Inc.*, 124 Fed. Appx. 92, 95 (3d Cir. 2005) *citing Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir.2000); *Warner v. Federal Express Corp.*, 174 F.Supp.2d 215, 219 (D.N.J. 2001).

Once plaintiff establishes a prima facie case, this creates a rebuttal presumption of discriminatory intent. *St Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-09 (1993); *Texas Dept. Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-55 (1981). While the burden of proof at all times remains with the plaintiff, upon this showing, the burden then shifts to the employer to produce a legitimate non-discriminatory for the termination. *Burdine,* 450 U.S. at 254; *Duffy v. Paper Magic Group*, 265 F.3d 163, 168 (3d Cir. 2001). The employer must support this reason with admissible evidence. *Id*. Upon this showing the presumption of discrimination is rebutted. The plaintiff then bears the burden of showing through admissible evidence that the proffered reason for the termination was not the true reason and was a pretext for discrimination. *Burdine,* 450 U.S. at 254; *Thoman,* 2007 WL 203943, *7; *citing St. Mary's*. at 509 U.S. at 507. To satisfy this burden the plaintiff must produce direct or circumstantial evidence from which a reasonable jury could conclude that the defendant's explanation is incredible. *Id.*

It is well established that the *McDonnell Douglas* test may be averted if the plaintiff can prove "direct evidence of discrimination." *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 511 (2002); *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). In the instant action, Plaintiff does not reply on direct evidence[2] rather he asserts that it can be inferred from the Defendants actions, and that their failure

[2] Direct evidence is evidence that can "prove the existence of a fact . . . without inference or presumption." *Perez v. New Jersey Transit Corp*., 2007 WL 2473834, n. 1 (D.N.J. 2007) The evidence required to make this showing has been labeled "direct" evidence and must show that "decisionmakers place substantial reliance on an illegitimate criterion in reaching their decision." *Price Waterhouse*, 490 U.S. 228, 277 (1989). While Plaintiff cites to the alleged statements of Mr. Gurango his supervisor at CDS that Quest was not looking to hire any individuals over the age of forty, Mr. Gurango refuted ever making such a comment. Moreover, there is nothing in the record that he was involved in the decisionmaking process. Direct evidence is rare in employment discrimination cases. Circumstantial evidence, on the other hand, requires the factfinder to infer the existence of a fact from the circumstances described. Circumstantial evidence may include "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces [that]

to hire him in 2004 was due to a discriminatory motive. This Court will proceed with a pretext analysis.

There is no dispute that Plaintiff is a member of a protected class. He is over the age of 40, is of Pakistani origin and a Muslim. Defendant argues Plaintiff was not qualified for the position of medical technician because all prospective employees who received their degrees outside the United States must provide documentation from IERF stating that the degrees they did earn were the equivalent of a U.S. Bachelor's degree, and Plaintiff did not do so. Plaintiff counters that he did not know of the requirement and Quest had an affirmative obligation to inform him. According to Plaintiff, this failure is sufficient to raise an inference of discrimination.

The Third Circuit has noted that if a plaintiff is not qualified for the job he or she seeks, the Court can reject a discrimination claim without the heavy lifting that is required if a prima facie case is made out. *Dorsey v. Pittsburgh Associates*, 90 Fed. Appx. 636, 639 (3d Cir. 2004) *citing Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 n. 4 (3d Cir. 1999) "While objective qualifications should be considered in evaluating the plaintiff's prima facie case, the question of whether an employee possess a subjective quality . . . is better left to consideration of whether the employer's non-discriminatory reason . . . is pretext." *Id. quoting Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995). Mr. Levine, Manager of Human Resources for Quest, states that Quest requires production of documents from IERF confirming that the foreign educational training was the equivalent of a bachelor's degree obtained in the United States. Plaintiff contends that there was no mention of IERF in the job posting, and that he did provide Quest with credentialing information from another service, WES. While Quest also submits the affidavit of Sharon Warren, a staffing specialist

might imply discrimination." *Perez*, 2007 WL 2473834, n. 1.(*quoting Troupe v. May Dep't Stores*, 20 F.3d 734, 736 (7th Cir.1994).

who states that she spoke with Mr. Tanvir and informed him of the IERF requirement, Plaintiff specifically refutes Ms. Warren's statements and asserts that the conversation never occurred. Plaintiff relies on this dispute to establish that the proffered reason lack of qualifications was pretext. If Quest did not advise foreign educated people of its very specific credential requirements, a reasonable jury could conclude that such non-disclosure was to limit hiring opportunities due to national origin. *Farron v. Human Health , Inc.*, 69 F.Supp.2d 1050, 1058 (N.D.Ill.1999) (finding a material issue of fact as to whether master's degree was required for promotion where job postings did not list the requirement and where several former employees did not have a master degrees). This dispute defeats summary judgment. *Anderson*, 477 U.S. at 247-48.

In conclusion, Defendant's motion for summary judgment is granted with respect to the 2002 failure to hire and denied with respect to the 2004 failure to hire claims.

September 27, 2007

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.